JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant, Jennifer Simmons-Means ("Simmons-Means"), appeals the trial court's granting summary judgment for defendants-appellees, Cuyahoga County Department of Justice Affairs, et al. ("the County"). Finding no merit to the appeal, we affirm.
 {¶ 2} In 2001, Simmons-Means began employment with Cuyahoga County as an assessment specialist supervisor for the residential substance abuse treatment program ("RSAT") at the Youth Development Center. In April 2002, defendant-appellee, Maureen Weigand ("Weigand"), was named Simmons-Means' supervisor. The next month, Simmons-Means filed an internal complaint against Weigand alleging discrimination. The County commenced an investigation concerning her complaint. Before the investigation was complete, Simmons-Means resigned. She alleged in her resignation letter that she was forced to "involuntarily terminate" her employment due to treatment and harassment which she "suspect[ed] [was] of a racial nature."
 {¶ 3} The County completed its investigation shortly after Simmons-Means resigned. The investigation found "insufficient cause" to determine that Weigand discriminated against Simmons-Means.
 {¶ 4} In 2003, Simmons-Means filed suit requesting punitive damages and alleging race discrimination, retaliation, violation of Ohio public policy, and intentional infliction of emotional distress. The suit named the Cuyahoga County Department of Justice Affairs, the Cuyahoga County Commissioners, Maureen Weigand, and Martin Murphy as defendants.
 {¶ 5} The County moved for summary judgment. Simmons-Means filed an affidavit of disqualification with the Ohio Supreme Court seeking to disqualify all the judges on the Cuyahoga County Common Pleas Court. The Ohio Supreme Court denied the request for disqualification. Supreme Court Case No. 05-AP-3. Thereafter, Simmons-Means filed her opposition to summary judgment. The trial court granted the motion for summary judgment as to all counts and for all defendants.
 {¶ 6} Simmons-Means appeals, raising four assignments of error. In her first assignment of error, she argues that the trial court committed reversible error by granting the County's motion for summary judgment.
 {¶ 7} This court reviews the lower court's granting of summary judgment de novo. Druso v. Bank One of Columbus (1997),124 Ohio App.3d 125, 131, 705 N.E.2d 717; Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.
 {¶ 8} The Ohio Supreme Court has established that summary judgment under Civ.R. 56 is proper when:
"(1) no genuine issue as to any material fact remains to belitigated; (2) the moving party is entitled to judgment as amatter of law; and (3) it appears from the evidence thatreasonable minds can come to but one conclusion, and viewing suchevidence most strongly in favor of the nonmoving party, thatconclusion is adverse to the party against whom the motion forsummary judgment is made."
 State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509,511, 628 N.E.2d 1377; Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267. The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. Celotex Corp. v. Catrett
(1987), 477 U.S. 317, 330, 91 L.Ed.2d 265, 106 S.Ct. 2548;Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115,526 N.E.2d 798. Any doubts must be resolved in favor of the nonmoving party.Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138. There is no issue for trial, however, unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 249-250,91 L.Ed.2d 202, 106 S.Ct. 2505.
 Racial Discrimination {¶ 9} Simmons-Means first argues she was the victim of race discrimination.
 {¶ 10} R.C. 4112.02 governs unlawful discriminatory practices and states that it is unlawful "for any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 11} The Ohio Supreme Court has established that the four-prong test found in McDonnell Douglas Corp. v. Green
(1973), 411 U.S. 792, 36 L. Ed.2d 668, 93 S.Ct. 1817, sets forth the formula that courts should apply "to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees." Plumbers Steamfitters Commt. v. Ohio Civil RightsComm. (1981), 66 Ohio St.2d 192, 196-197, 421 N.E.2d 128.
 {¶ 12} Generally, a prima facie case of racial discrimination under McDonnell Douglas requires a plaintiff to establish that she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position lost or not gained; and (4) that the position remained open or was filled by a person not of the protected class. McDonnellDouglas, supra at 802. In disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show she was treated differently from similarly-situated individuals. Mitchell v. Toledo Hosp. (6th Cir. 1992),964 F.2d 577, 582.
 {¶ 13} If a plaintiff is able to establish a prima facie case of discrimination under McDonnell Douglas, then a presumption is created that the employer unlawfully discriminated against the employee and the burden shifts to the defendant to produce evidence that its actions regarding the plaintiff were based on legitimate nondiscriminatory reasons. Texas Dept. of CommunityAffairs v. Burdine (1981), 450 U.S. 248, 254, 67 L.Ed.2d 207,101 S.Ct. 1089. Thereafter, the burden switches to the plaintiff, who must show that defendant's stated justification is in fact merely a pretext for unlawful discrimination. The ultimate burden of persuasion remains at all times with the plaintiff. Id.
 {¶ 14} Applying the foregoing standards to the claim of race discrimination, it is evident that Simmons-Means has not demonstrated a prima facie case of discrimination. The parties do not dispute that Simmons-Means, an African-American, is a member of a protected class. The parties also agree that Simmons-Means was qualified for the position of assessment specialist supervisor for the RSAT program. Thus, the first and third prongs of the McDonnell Douglas test are clearly established. We find, however, that Simmons-Means failed to establish that she suffered an adverse employment action or was treated differently from other employees.
 {¶ 15} An adverse employment action is a "materially adverse change in the terms or conditions of * * * employment because of [the] employer's conduct." Kocsis v. Multi-Care Mgmt., Inc.
(6th Cir. 1996), 97 F.3d 876, 885. Simmons-Means claims that she was forced to involuntarily resign based upon conduct she suspects was "of a racial nature." Such resignation, she argues, amounts to a constructive discharge based upon her race and, thus, her "forced" resignation qualifies as an adverse employment action. She further claims that she has a common law claim pursuant to Greeley v. Miami Valley Maintenance Contr., Inc.
(1989), 49 Ohio St.3d 228, 551 N.E.2d 981.[1]
 {¶ 16} Courts generally apply an objective test in determining when an employee was constructively discharged.Mauzy v. Kelly Servs., 75 Ohio St.3d 578, 588-589, 1996-Ohio-265, 664 N.E.2d 1272, citing Clowes v. AlleghenyValley Hosp. (C.A. 3, 1993), 991 F.2d 1159, 1160-1161. A court must determine whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. Id.
 {¶ 17} Based on the evidence submitted and a thorough review of the record, we find that Simmons-Means is unable to show an adverse employment action occurred or that she was constructively discharged. Thus, her claims must fail. Despite the fact that Simmons-Means claims that the County's actions resulted in her constructive discharge, she admitted that she was never fired from her position with the Department of Justice Affairs. She was also never suspended, demoted, docked pay, or otherwise formally disciplined. She characterized her relationship with her supervisor, Weigand, as "negative," but failed to specify any underlying racially discriminatory facts which would lead a reasonable person to believe that termination was imminent. SeeMauzy, supra at 589. In fact, Simmons-Means concedes that Weigand never threatened her with removal or overtly told her that she did not want to work with her. Simmons-Means contends that she "perceived subtle threats of removal." We find no support in the record, however, that working conditions were so intolerable that a reasonable person would have felt compelled to resign.
 {¶ 18} Simmons-Means alleges that Weigand harassed her and undermined her authority by having private meetings with Simmons-Means' staff, telling the staff to write up Simmons-Means, by disrespecting African-Americans, and by allegedly calling her "stupid." Even if this court were to consider the allegations as true, they do not rise to the level of a constructive discharge. Moreover, the evidence shows that Simmons-Means resigned her employment to take another job. Simmons-Means signed a letter of employment with another employer prior to submitting her resignation with the County. The employment letter, which she signed weeks before she resigned, obligated her to begin another full-time job. We agree with the trial court that she cannot now claim that she was somehow "forced" to resign after she voluntarily obligated herself to work for another employer.
 {¶ 19} To support her claim for disparate treatment, Simmons-Means alleges that, when she was late for a meeting, she was treated differently than a white employee. She claims that Weigand lied and "wrote her up," claiming she was an hour late for a meeting. She argues that employee Calvin White, who is Caucasian, was more than an hour late returning from lunch and was not "written up" by Weigand. Therefore, she concludes, she was unlawfully treated differently because of her race.
 {¶ 20} We find that this single alleged incident does not rise to the level of disparate treatment based on race. There is no evidence that Simmons-Means was treated differently or "written-up" solely because she is African-American.
 {¶ 21} Therefore, we find that Simmons-Means is unable to establish a prima facie case of discrimination. Since this claim fails, it follows that her Greeley claims fail as well. Brooksv. QualChoice, Inc., Cuyahoga App. No. 85692, 2005-Ohio-5136, ¶¶ 141-5, citing, Contreras v. Ferro Corp. (1995),73 Ohio St.3d 244, 652 N.E.2d 940.
 Hostile Work Environment {¶ 22} Simmons-Means next claims that she was subjected to a hostile work environment. To establish a claim brought under R.C. 4112 against an employer for hostile work environment harassment, a plaintiff must establish: (1) the employee was a member of the protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex or race; (4) the harassment had the purpose or effect of unreasonably interfering with the employee's work performance or creating an intimidating, hostile, or offensive work environment; and (5) the existence of respondeat superior liability. Delaneyv. Skyline Lodge, Inc. (1994), 95 Ohio App.3d 264, 270,642 N.E.2d 395, citing Harris v. Forklift System, Inc. (1993),510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295.
 {¶ 23} In order to be actionable, a hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Bell v. CuyahogaCommunity College (1998), 129 Ohio App.3d 461, 717 N.E.2d 1189, citing Faragher v. City of Boca Raton (1998), 524 U.S. 775,118 S.Ct. 2275, 141 L.Ed.2d 662. In Faragher, supra at 786, quotingHarris, supra at 371, the Supreme Court stated:
"We directed courts to determine whether an environment issufficiently hostile and abusive by `looking at all thecircumstances,' including the `frequency of the discriminatoryconduct; its severity; whether it is physically threatening orhumiliating, or a mere offensive utterance; and whether itunreasonably interferes with an employee's work performance.'
" * * *
We have made it clear that conduct must be extreme to amountto a change in the terms and conditions of employment * * *."
 {¶ 24} Accordingly, Simmons-Means has failed to demonstrate that the workplace was permeated with "discriminatory intimidation, ridicule, and insult," which was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." The record indicates conflict between Simmons-Means and Weigand but there is no evidence that it was based upon her being African-American. See Hampel v. Food Ingredients Specialties, Inc.,89 Ohio St.3d 169, 176-77, 2000-Ohio-128, 729 N.E.2d 726 ("R.C. 4112.02(A) does not reach disparate treatment on account of personal animosity; no matter how severe or pervasive the conduct, harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a prohibited classification."); see also Rice v.Cuyahoga County DOJ, Cuyahoga App. No. 85576, 2005-Ohio-5337.
 {¶ 25} There is no evidence, aside from Simmons-Means' unsupported statements, that she was subjected to a hostile work environment. See Evans v. Jay Instrument Specialty Co. (S.D. Ohio 1995), 889 F. Supp. 302, 310 ("bald self-serving and conclusory allegations are insufficient to withstand a motion for summary judgment"). Simmons-Means fails to specify what the County did that was racially biased. She claims that the "abrupt manner" in which Weigand treated her created a hostile work environment. The County, however, concluded that although Weigand may have been abrupt with Simmons-Means, she was also abrupt with other non-minority employees. Simmons-Means admitted at deposition that she herself had never heard Weigand utter a racial slur and that her only contact with appellee Murphy consisted of being present at two meetings he attended.
 {¶ 26} Simmons-Means claimed that she had contacted the County commissioners about her problems at work, but during her deposition, she was unable to provide relevant documentation, to remember the mode of communication, or to recall when she contacted a commissioner. The only document in the record that references the commissioners is her resignation letter.
 {¶ 27} As the trial court stated, although Simmons-Means' work environment may have been negative, hostile, or even antagonistic, there is no evidence that would lead a reasonable person to believe that such an environment was created because of her race. See Hampel v. Food Ingredients Specialties, Inc.,89 Ohio St.3d 169, 2000-Ohio-128.
 {¶ 28} As we noted in Rice, supra at ¶ 38, the bulk of the "evidence" relied upon by Simmons-Means is presented in connection with other litigation filed against the County or hearsay regarding alleged discrimination against other County workers. Simmons-Means has established no connection between these alleged occurrences and her own claims and has not demonstrated how this alleged conduct altered the conditions of her employment and created an abusive working environment. SeeMcLeod v. Parsons Corp. (6th Cir. 2003), 73 Fed. Appx. 846.
 {¶ 29} Therefore, the first assignment of error is overruled.
 Retaliation {¶ 30} In her second assignment of error, Simmons-Means argues that the trial court erred in granting the County summary judgment because she produced direct evidence of retaliation.
 {¶ 31} R.C. 4112.02(I) states in pertinent part that it is unlawful to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice * * * or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to4112.07 of the Revised Code.
 {¶ 32} To establish a prima facie case of retaliation under R.C. 4112.02(I), Simmons-Means was required to prove the following elements: (1) she engaged in protected activity; (2) the appellees knew of her participation in the protected activity; (3) the appellees engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action. Chandler v. Empire Chem., Inc., Midwest RubberCustom Mixing Div. (1994), 99 Ohio App.3d 396, 402,650 N.E.2d 950; Powers v. Pinkerton, Inc. (Jan. 18, 2001), Cuyahoga App. No. 76333.
 {¶ 33} In the instant case, Simmons-Means alleges that the County retaliated after she reported she was being discriminated against. She alleges that her former employer failed to act on her complaint, that Weigand threatened her and falsely "wrote her up," that the County had knowledge that African-American employees were complaining about Weigand and Murphy, and that the County destroyed evidence in the case.
 {¶ 34} Other than her employer's delay in completing its investigation of her complaint, Simmons-Means' broad accusations are completely unsupported by the record. And although we find evidence that the County failed to follow its own policy in investigating the complaint, Simmons-Means has failed to show how the delay was retaliatory or prejudiced her. Moreover, even if her other allegations are considered true, Simmons-Means fails to demonstrate how the actions were retaliatory or to establish a causal link.
 {¶ 35} Therefore, finding no error in the trial court's grant of summary judgment as to Simmons-Means' claim of retaliation, we overrule the second assignment of error.
 Intentional Infliction of Emotional Distress {¶ 36} In her third assignment of error, Simmons-Means argues that the trial court erred in dismissing her claim for emotional distress.
 {¶ 37} App.R. 12(A)(2) provides:
"The court may disregard an assignment of error presented forreview if the party raising it fails to identify in the recordthe error on which the assignment of error is based or fails toargue the assignment separately in the brief, as required byApp.R. 16(A)."
 {¶ 38} If an argument exists which can support the assignment of error, it is not this court's duty to root it out.Citta-Pietrolungo v. Pietrolungo, Cuyahoga App. No. 85536,2005-Ohio-4814, citing Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673.
 {¶ 39} Simmons-Means has failed to cite any legal authority or parts of the record on which she relies to support her argument as required by App.R. 16(A). Therefore, pursuant to App.R. 12(A), we disregard this assigned error.
 Due Process {¶ 40} In her fourth assignment of error, Simmons-Means argues that she was denied due process of law because the trial court granted summary judgment.
 {¶ 41} Simmons-Means cites no authority to support her claim that because summary judgment was granted, her due process rights were violated. Instead, she cites inapposite cases that discuss an indigent person's right to a transcript. There is no allegation that Simmons-Means is indigent or that she was denied a transcript. We find that she was properly served with the motion for summary judgment and afforded the opportunity to respond to the motion. Furthermore, because summary judgment was properly granted, no rights were violated.
 {¶ 42} Therefore, the fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O. Calabrese, Jr., J. and Corrigan, J. Concur.
[1] In Greeley, supra, the Ohio Supreme Court first recognized that public policy warrants an exception to the employment at-will doctrine when an employee is discharged or disciplined for a reason that violates the clear public policy of Ohio. To state a claim of wrongful discharge in violation of public policy, a plaintiff must allege facts demonstrating that the employer's act of discharging her contravened a clear public policy. Painter v. Graley, 70 Ohio St.3d 377, 1994-Ohio-334,639 N.E.2d 51.