[Cite as *Hudson v. FPT Cleveland, L.L.C.*, 2024-Ohio-2904.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

DARRYL HUDSON,                                    :

    Plaintiff-Appellant,                :

    v.                                            :          Nos. 113126 and 113375

FPT CLEVELAND LLC, ET AL.,              :

    Defendant-Appellee.              :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 1, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-966432

---

### *Appearances:*

Darryl Hudson, *pro se.*

Frantz Ward LLP, Andrew J. Cleves, and Michael N. Chesney, *for appellee.*

MARY EILEEN KILBANE, P.J.:

{¶ 1} Plaintiff-appellant Darryl Hudson ("Hudson"), pro se, appeals from the trial court's July 26, 2023 grant of summary judgment in favor of defendants-appellees FPT Cleveland LLC ("FPT"), Soave Enterprises L.L.C. ("Soave"), and Cleveland-Cliffs Inc. ("Cleveland-Cliffs") (collectively "defendants"), and from the

trial court's October 24, 2023 denial of Hudson's Civ.R. 60(B) motion for relief from judgment. For the following reasons, we affirm.

## I. Factual and Procedural History

{¶ 2} At all times, Hudson was pro se. This lawsuit stems from Hudson's employment at FPT from December 2018 through July 2021.

{¶ 3} FPT, a part of Ferrous Process & Trading Co., processes, buys, sells, and recycles scrap metal. Soave provides management and organizational support services to FPT, and from January 2108 through July 2021, it also provided senior human resources and legal support services. FPT and Soave were owned by the same parent entity, but Soave had no ownership interest in FPT. Steel manufacturer Cleveland-Cliffs acquired 100% of the equity interests in FPT in a transaction that was completed on or about November 18, 2021.

{¶ 4} At all relevant times, FPT employed Hudson, an African-American, at its scrap metal facility in Cleveland, Ohio. The facility includes a scrap yard, with a high level of activity including 18-wheel semitrucks entering and depositing loads of scrap metal onto a sheet pad, and FPT employees operating heavy machinery to support the yard's functions. A mill is also present on the yard that sorts and processes the scrap metal acquired by FPT. The facility maintains numerous potentially dangerous operations and conditions within which its employees must operate. FPT employs safety polices, practices, and procedures that employees are expected to follow. FPT also maintains work rules "for the common good and welfare of all of its employees," "to ensure efficient and safe operations," and to

identify offenses that may result in immediate termination or progressive discipline and penalties. Appellee's brief, p. 4.

{¶ 5} In December 2018, Hudson started working as a laborer for FPT through a temporary staffing agency. During Hudson's temporary and subsequent full-time work with FPT, he was supervised by the yard manager, Mr. James Brooks ("Brooks"), who is African-American.

{¶ 6} On March 9, 2020, FPT hired Hudson as a full-time employee; Hudson continued working as a laborer in the mill area. On that same date, Hudson completed an employment application for a position in the mill. The employment application stated "as a condition of my employment I will abide by the policies and procedures outlined within the manual" and "I am expected to comply with all applicable laws, rules and/or regulations." Employee acknowledgment, March 9, 2020. FPT's work rules and discipline policy states each situation that requires discipline will be addressed on a case-by-case basis. The work rules explicitly state that "unauthorized sleeping or assuming the position and/or appearance of sleeping on the job" is an offense that may result in immediate discharge. FPT work rule A(5).

{¶ 7} During his employment with FPT, Hudson exhibited behavior in contravention to the company's safety or work rules, and his personnel file included written documentation of those incidents. The first incident occurred on August 1, 2019, while Hudson was employed as a temporary worker. Hudson stood on the forks of a forklift and was lifted into a refrigerator van. Hudson claimed he acted in

this manner at the direction of an experienced coworker. Despite violating FPT's safety and work rules, FPT did not discharge Hudson but conducted additional safety training.

{¶ 8} On May 26, 2020, Hudson's coworker, Leonard Kesman ("Kesman"), tossed a strap to Hudson and the strap allegedly hit Hudson in the head or on his helmet. In response, Hudson allegedly called Kesman derogatory names and racial slurs. An African-American coworker confirmed that Hudson threatened to physically harm Kesman. FPT investigated the situation and provided Kesman and Hudson with verbal warnings and instructions that future violations would lead to written warnings and/or termination.

{¶ 9} Around the fall of 2020, Hudson began training as a loader operator, also known as a powered industrial truck operator. Hudson stated FPT approached him about the training opportunity because he was dependable and a "good employee." Appellate brief, p. 12. In January 2021, Hudson completed his powered industrial truck certification and was classified as an operator. Hudson completed his work as an operator on the sheet pad. The new classification resulted in a pay increase although FPT claims Hudson was not guaranteed to work exclusively as a loader operator because FPT utilized workers in various roles depending upon the company's needs. Hudson, and other FPT employees, could be assigned to either laborer or loader operator duties although Hudson would receive the increased loader operator pay regardless of the daily tasks he completed. Hudson preferred the assignment as a loader operator that allowed him to work in the temperature-

controlled truck rather than outside as a laborer completing dirtier tasks while being exposed to the elements.

{¶ 10} On April 22, 2021, FPT received complaints from two workers that Hudson made inappropriate sexual comments and/or inappropriately touched them. An African-American worker witnessed one of the incidents and corroborated the allegations against Hudson. Hudson denied the allegations. FPT chose not to terminate Hudson but provided him with a written warning and last chance letter.

{¶ 11} On June 4, 2021, Hudson damaged a loader while completing his work responsibilities. Per FPT, Hudson's actions were in violation of three work rules, one of which could have resulted in his termination. FPT issued a written warning and provided Hudson with further safety training.

{¶ 12} In the summer of 2021, Hudson experienced tension with his coworkers. On or around July 14, 2021, allegedly due to Hudson's unwillingness to work as a team player and the absence of any other jobs on the sheet pad to which his manager could assign Hudson, Brooks reassigned Hudson to work as an operator in the impound area. FPT indicated that in this position, Hudson could perform his work responsibilities individually. Neither Hudson's pay nor hours were adversely impacted by his new job assignment, but Hudson testified that work in the impound area was dirty and he preferred working at the sheet pad.

{¶ 13} Hudson complained to Human Resources about his reassignment as well as ongoing concerns with coworkers. Kristan Williams ("Williams"), the

Human Resources Manager at Soave, provided the following comments about Hudson's complaints to FPT and FPT's investigation:

> In July 2021, I became aware of certain complaints that Mr. Hudson made to Human Resources. I also became involved in and assisted with FPT's investigation into Mr. Hudson's complaints. FPT promptly and thoroughly investigated Mr. Hudson's complaints. During its investigation, FPT: spoke with Mr. Hudson to gather facts and understand his claims; interviewed and questioned employees; held a team meeting to ask everyone to do their jobs and work as a team; reviewed the video Mr. Hudson provided; and conducted a three-and one-half-hour meeting with Mr. Hudson to discuss his claims. As a result of FPT's investigation, I drafted an Investigation Follow-up Letter, which was sent to Mr. Hudson. . . .

Williams Affidavit.

{¶ 14} Hudson also reported an incident where he claimed his eyeglasses were missing after he inadvertently left them in the break room. With the assistance of Brooks, Hudson located his eyeglasses within 30 minutes in a location where another employee stated he had placed them. Brooks did not find any evidence that coworkers absconded with Hudson's eyeglasses although Hudson did not agree with that conclusion.

{¶ 15} On July 26, 2021, supervisor Jay Borgia ("Borgia") observed Hudson sleeping in a running, 33,940-pound CAT loader. The supervisor obtained photographs and a 15-second video that depicted Hudson with his head leaning back, eyes closed, and mouth wide-open. FPT immediately terminated Hudson's employment pursuant to FPT's work rule A(5): "[u]nauthorized sleeping or assuming the position and/or appearance of sleeping on the job" subjects an employee to immediate discharge. FPT work rule A(5).

{¶ 16} After his termination, Hudson informed FPT that he had an eye condition that required him to rest his eyes. Hudson also provided a note from an eye specialist that stated Hudson has corneal scars that could cause a dry eye sensation and eye fatigue, and Hudson has been advised not to wear contact lenses while working. Hudson wore eyeglasses on the date of his termination.

{¶ 17} Following his termination, Hudson also provided Williams pictures of an FPT employee sleeping while in the break room. This was the first time Hudson provided the photos to FPT, and despite Williams's request for additional information, Hudson did not verify the identity of the worker or when the picture was taken. Williams's independent investigation revealed the worker in the picture resigned seven months prior to Hudson's termination, and Williams was unable to confirm if the pictures were taken during work hours.

{¶ 18} FPT employed Donna Cook ("Cook") as the company's Human Resources/Safety provider. Cook was employed from January 1, 2018, through July 2021 — Hudson's tenure with the company. Cook's affidavit was attached to the defendants' motion for summary judgment ("MSJ") and reads, in pertinent part:

> 10. I am the only Human Resources Department employee who works at FPT Cleveland's scrap metal facility, and this has been the case since 2011.
>
> 11. As the on-site Human Resources person, I have numerous duties and responsibilities. Those include, but are not limited to the following: I am responsible for maintaining the personnel files of FPT Cleveland employees; I coordinate the assignment of temporary employees at the facility; I coordinate the hire of full-time employees with FPT Cleveland; I issue or am involved in issuing discipline to employee; I sign-off on Employee Status Change Forms, whether they

relate to an employee's hire, pay rate adjustments, discharge, resignation, or other matters; I have approved FPT Cleveland job descriptions; and I conduct investigations into employee complaints and issues.

. . .

13. In the course and scope of my job, I was familiar with the assignment as a temporary employee and later full-time employment of Mr. Darryl Hudson. I also have reviewed Mr. Hudson's personnel file, which FPT Cleveland maintains in the ordinary course of business.

14. Mr. Hudson first began working at FPT Cleveland's scrap metal facility as a laborer through a temporary staffing agency (Minute Men Staffing) in December 2018.

. . .

16. FPT Cleveland hired Mr. Hudson as a full-time employee, a Laborer in the mill area, on March 9, 2020. Mr. Hudson worked a 7 a.m. to 3:30 p.m. shift throughout his full-time employment.

17. In late May 2020, I learned of an incident between Mr. Hudson and another employee, Mr. Leonard Kesman in which Mr. Kesman had tossed a strap to Mr. Hudson. I investigated the incident and, during my investigation, interviewed and obtained statements from Mr. Kesman, Mr. Hudson, and a witness, Mr. Darryl Jenkins. Mr. Kesman claimed that Mr. Hudson was looking at him when he tossed Mr. Hudson the strap. Mr. Hudson alleged that the strap hit him in the head/helmet. As a result of the investigation, FPT Cleveland issued both Mr. Hudson and Mr. Kesman a verbal warning dated May 27, 2020.

18. On April 22, 2021, I received internal complaints from two different employees who alleged that Mr. Hudson made inappropriate sexual comments and/or inappropriately touched them. Mr. Devin Childers submitted a complaint about inappropriate comments Mr. Hudson made to him on April 20, 2021. Mr. Childers submitted a written statement, dated April 22, 2021, concerning the incident and his complaint. In his written statement, Mr. Childers also complained about inappropriate comments Mr. Hudson made to him on April 22, 2021. . . .

19. Another employee, Mr. John Hopkins who, to the best of my knowledge, identifies as African American, witnessed the April 20, 2021 incident where Mr. Hudson made inappropriate comments to Mr. Childers. Mr. Hopkins submitted a witness statement about the incident . . .

20. On April 22, 2021, Mr. Aaron Ostrowsky also submitted a complaint about inappropriate comments Mr. Hudson made to him on April 20, 2021. . . .

21. FPT Cleveland investigated the complaints made about Mr. Hudson by Mr. Childers and Mr. Ostrowsky. As part of the investigation, FPT Cleveland interviewed Mr. Childers, Mr. Ostrowsky, Mr. Hopkins, Mr. Brooks, and Mr. Hudson.

22. As a result of its investigation, FPT Cleveland issued Mr. Hudson a formal written warning. Mr. Hudson's conduct violated Section A work rules, from FPT Cleveland's Work Rules and Discipline policy, which could have led to Mr. Hudson's immediate discharge.

23. On July 26, 2021, FPT Cleveland terminated Mr. Hudson's employment for violating FPT Cleveland Section A work rule #5, which prohibits unauthorized sleeping or assuming the position and/or appearance of sleeping on the job. . . .

24. Between January 1, 2020 and May 31, 2023, FPT Cleveland is aware of one employee, other than Mr. Hudson, who was found sleeping on the job. FPT Cleveland discharged that employee for violating the same work rule as Mr. Hudson.

25. In October 2021, FPT Cleveland received notices from the Ohio Civil Rights Commission ("OCRC") regarding two Charges of Discrimination ("Charges") that Mr. Hudson had filed. As the on-site Human Resources person, I promptly received the notices once they were delivered to FPT Cleveland. One notice related to Charge No. "CLE74(46514)- 7152021 AMENDED" and the OCRC's letter with respect to this Charge was dated October 5, 2021. Attached to this letter was a copy of a Charge which appeared to have been signed by Mr. Hudson and notarized on September 20, 2021. The second notice related to Charge No. "CLEB4(46661)09202021" and the OCRC's letter with respect to this Charge was dated October 20, 2021, Attached to this letter was a copy of a Charge which appeared to have been signed by Mr. Hudson and notarized on September 20, 2021. . . .

26. In the course and scope of my job, I was familiar with the assignment as a temporary employee and later full-time employment of Mr. Robert Parrigan. I also have reviewed Mr. Parrigan's personnel file, which FPT Cleveland maintains in the ordinary course of business.

27. Mr. Parrigan first started working at FPT Cleveland's scrap yard facility as a temporary employee in March 2019, and, at that time, he filled the Railroad Switcher position. Mr. Parrigan worked as a Railroad Switcher for the duration of his time as a temporary employee, until he was hired as a full-time employee by FPT Cleveland in August 2019. FPT Cleveland hired Mr. Parrigan as a Railroad Switcher. Attached to this Affidavit as Exhibit 7 are documents from Mr. Parrigan's personnel file which demonstrate that he held the Railroad Switcher position during his time as a temporary employee and was hired into the same role.

28. In the course and scope of my job, I was familiar with the assignment as a temporary employee and later full-time employment of Mr. Shawn Varney. I also have reviewed Mr. Varney's personnel file, which FPT Cleveland maintains in the ordinary course of business.

29. On October 19, 2020, Mr. Varney received his Material Handler Operator certification, which enabled him to operate the Shearing machine.

30. In the course and scope of my job, I was familiar with the assignment as a temporary employee and later full-time employment of Mr. Joseph Kaminskie. I also have reviewed Mr. Kaminskie's personnel file, which FPT Cleveland maintains in the ordinary course of business.

31. FPT Cleveland hired Mr. Kaminskie as a full-time Laborer, assigned to work the night shift, on January 20, 2020. Mr. Kaminskie later received his certifications to operate Powered Industrial Trucks and be a Material Handler Operator on June 16, 2021.

Cook Affidavit.

{¶ 19} On July 21, 2022, Hudson filed a complaint against defendants alleging he was subject to racial discrimination during his employment with FPT.[1]

{¶ 20} On June 8, 2023, FPT, Soave, and Cleveland-Cliffs filed a motion for summary judgment, and the motion was fully briefed by the parties. On July 6, 2023, Hudson filed a pleading titled "Motion to strike the exhibits herein with supporting reason by law and/or documentation. Also response to defendant motion for summary judgment." Hudson's motion sought to strike exhibits attached to the defendants' MSJ and argued additional discovery issues. On July 20, 2023, defendants filed a brief in opposition to Hudson's motion to strike. On July 26, 2023, the trial court granted the defendants' MSJ before Hudson had an opportunity to file a reply brief to support his motion to strike.

{¶ 21} On August 25, 2023, Hudson filed a motion to set aside the final judgment in accordance with Civ.R. 60.[2] On the same date, Hudson appealed the trial court's grant of summary judgment to defendants. 8th Dist. Cuyahoga No. 113126.

{¶ 22} On September 14, 2023, this court remanded the case, and on October 24, 2023, the trial court denied Hudson's Civ.R. 60(B) motion. On

---

[1] Hudson's complaint also named the Ohio Civil Right Commission ("the OCRC") as a defendant. On August 8, 2022, OCRC filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6) and 12(B)(1), that the trial court subsequently granted.

[2] On August 25, 2023, Hudson also filed a Civ.R. 61 motion. It is difficult to discern what relief Hudson sought through that motion; he appears to seek to correct a signature for his motion to strike. The trial court issued a journal entry stating there was no filing by Hudson, prior to the court's ruling on the defendants' MSJ, that was disregarded due to a lack of a signature and, therefore, the Civ.R. 61 motion was found moot.

November 16, 2023, Hudson appealed the trial court's judgment denying his Civ.R. 60(B) motion for relief from judgment. 8th Dist. Cuyahoga No. 113375. On November 20, 2023, this court, sua sponte, consolidated Hudson's two pending appeals, and Hudson's consolidated appeal now raises 21 assignments of error.

## II. Legal Analysis

{¶ 23} Initially, we note that Hudson acted pro se in the trial court and presents himself pro se on appeal. This court has previously recognized

> a pro se litigant may face certain difficulties when choosing to represent oneself. Although a pro se litigant may be afforded reasonable latitude, there are limits to a court's leniency. *Henderson v. Henderson*, 11th Dist. Geauga No. 2012-G-3118, 2013-Ohio-2820, ¶ 22. Pro se litigants are presumed to have knowledge of the law and legal procedures, and are held to the same standard as litigants who are represented by counsel. *In re Application of Black Fork Wind Energy, L.L.C.*, 138 Ohio St.3d 43, 2013-Ohio-5478, 3 N.E.3d 173, ¶ 22.

*Saeed v. Greater Cleveland Regional Transit Auth.*, 2017-Ohio-935, ¶ 7 (8th Dist.). Thus, we presume Hudson had knowledge of the law, legal procedures, and appellate process.

{¶ 24} While Hudson raises 21 assignments of error, there is much overlap between them and, essentially, Hudson argues these issues: (1) did the trial court err when it granted the defendants' MSJ, (2) did the trial court err when it denied Hudson's Civ.R. 60(B) motion, (3) did the trial court err when it failed to provide judicial review under R.C. 4112.06, and (4) did the trial court err when it denied Hudson's motion to strike.

## A. Motion for Summary Judgment

### 1. Standard of Review

{¶ 25} Before a trial court grants an MSJ, pursuant to Civ.R. 56(C), the court must determine that

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶ 26} On an MSJ, the moving party's initial burden is to identify specific facts in the record that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party does not satisfy this burden, summary judgment is not appropriate. If the moving party meets the burden, the nonmoving party has a reciprocal burden to point to evidence of specific facts in the record that demonstrate the existence of a genuine issue of material fact for trial. *Id.* at 293. Where the nonmoving party fails to meet this burden, summary judgment is appropriate. *Id.*

{¶ 27} An appellate court applies a de novo standard when reviewing a trial court's decision that granted summary judgment. *Bayview Loan Servicing, L.L.C. v. St. Cyr*, 2017-Ohio-2758, ¶ 11 (8th Dist.).

{¶ 28} The defendants' MSJ addressed the causes of action presented in Hudson's complaint: (1) racial discrimination as demonstrated by FPT's failure to

hire Hudson sooner, FPT's decision to terminate Hudson, and FPT's disciplinary action, (2) retaliation under Title VII and R.C. Ch. 4112, (3) a hostile work environment, and (4) a violation of Article 23.1 of the Universal Declaration of Human Rights. All causes of action were directed against all three defendants — FPT, Soave, and Cleveland-Cliffs.

{¶ 29} Hudson filed his discrimination claims pursuant to R.C. Ch. 4112, that makes it unlawful to discharge an employee without just cause because of race or "otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A). To the extent that the rights presented in R.C. Ch. 4112 are comparable to those expressed in Title VII of the Civil Right Act of 1964, 42 U.S.C. 2000 et seq., we can apply federal precedent to interpret R.C. Ch. 4112. *Southworth v. N. Trust Sec., Inc.*, 2011-Ohio-3467, ¶ 2 (8th Dist.).

{¶ 30} A party can prove discrimination claims either with direct evidence of discrimination or, absent direct evidence, by establishing a prima facie case of discrimination. When relying on indirect evidence, "[t]he Ohio Supreme Court has established that the four-prong test found in *McDonnell Douglas Corp. v. Green* 411 U.S. 792, 36 (1973), sets forth the formula that courts should apply 'to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees.'" *Simmons-Means v. Cuyahoga Cty. Dept. of Justice Affairs*, 2006-Ohio-4123, ¶ 11 (8th Dist.), quoting *Plumbers & Steamfitters Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196-197 (1981).

{¶ 31} Once the plaintiff establishes a prima facie case of discrimination, a presumption of discrimination is created and the burden of production shifts to the employer who, to overcome the presumption, must articulate a legitimate, nondiscriminatory reason for the termination. *McDonnell*, at 802-803. If the employer successfully satisfies this burden, the burden shifts back to the employee to show, by a preponderance of the evidence, that the employer's proffered reason for discharge was a mere pretext for the unlawful discrimination. *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 668 (9th Dist. 1990).

**2. Racial Discrimination for Failure to Hire**

{¶ 32} To establish a prima facie case where the plaintiff allegedly was not hired due to racial discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position lost or not gained; and (4) that the position remained open or was filled by a person not of the protected class. *Love v. Columbus*, 2021-Ohio-3494, ¶ 18, fn. 2 (10th Dist.), quoting *Janiszewski v. Belmont Career Ctr.*, 2017-Ohio-855, ¶ 54 (7th Dist.).

{¶ 33} This court has found that

> [a]n adverse employment action is any "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vogt v. Total Renal Care, Inc.*, 8th Dist. Cuyahoga No. 103102, 2016-Ohio-4955, ¶ 13, quoting *Tepper v. Potter*, 505 F.3d 508 (6th Cir.2007). "Changes in employment conditions that result merely in inconvenience or an alteration of job responsibilities are not disruptive enough to constitute

an adverse employment action." *Eakin v. Lakeland Glass Co.*, 9th Dist. Lorain No. 04CA008492, 2005-Ohio-266, ¶ 19.

*Taylor-Stephens v. Rite Aid of Ohio*, 2018-Ohio-4714, ¶ 55 (8th Dist.).

{¶ 34} It is undisputed that Hudson, an African-American, is a member of a protected class. Hudson alleges that the defendants demonstrated racial discrimination when they (1) hired Robert Parrigan as a railroad switcher rather than Hudson, and (2) promoted Joe Kaminskie rather than Hudson to the loader position. Based upon a review of the evidence, Hudson is unable to show racial discrimination in its hiring practices.

**(a) Railroad Switcher**

{¶ 35} There is no evidence that Hudson applied for and did not receive the railroad switcher position. Hudson testified that one is hired at FPT upon completion of an employment application. On March 9, 2020, Hudson completed an employment application for the position of laborer in the mill area; the record contains no indication that Hudson applied for a position as railroad switcher. We find Hudson's claims that FPT purposely did not inform Hudson about the railroad switcher position unsubstantiated. We cannot find that FPT failed to hire Hudson when Hudson never applied for the position. Where a party's claim fails on one element of the *McDonnell Douglas* test, this court need not address the remaining elements.

**(b) Loader Operator**

{¶ 36} The alleged claim regarding Joe Kaminskie arose in the spring of 2021 when Kaminskie was hired as a loader operator rather than Hudson. Hudson stated he complained to Williams in the human resources department that he had seniority over Kaminskie, and he held a loader operator's certification while Kaminskie did not. According to Hudson, following his conversation with Williams, he was placed in the loader position. Hudson did not show he suffered an adverse employment action; instead FPT promoted Hudson to the position he sought.

**3. Racial Discrimination Based Upon Termination**

{¶ 37} Hudson alleges his termination by FPT subjected him to racial discrimination.

{¶ 38} To establish a prima facie case of racial discrimination following termination, a plaintiff must show (1) he was a member of a protected class, (2) he was discharged, (3) he was qualified for the position in question, and (4) he was replaced by, or his discharge permitted the retention of, a person who did not belong to the protected class. The fourth element can be met, in the alternative, by showing that a comparable, nonprotected person was treated more favorably. *Williams v. PNC Bank, N.A.*, 2022-Ohio-4287, ¶ 58 (8th Dist.).

{¶ 39} We are not persuaded by FPT's arguments that Hudson's ongoing disciplinary problems and failure to comply with company policy demonstrated he was not qualified for his position. Therefore, we find Hudson satisfied the first three

elements. However, Hudson is not able to demonstrate the fourth element — that a comparable, nonprotected person was treated more favorably than Hudson.

{¶ 40} The evidence shows that Hudson was terminated for sleeping on the job in violation of the company's work rules. Between January 1, 2020, and May 31, 2023, only one other employee at FPT, besides Hudson, was found in violation of the same work rule — unauthorized sleeping or assuming the position and/or appearance of sleeping on the job. That individual was terminated, just as Hudson was terminated. Hudson did not establish that another employee who was similarly situated in all relevant aspects of employment and was a member of a nonprotected class was treated more favorably than Hudson. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998).

## 4. Racial Discrimination based upon Disparate Treatment

{¶ 41} Hudson alleged additional incidents of discriminatory behavior by FPT.

{¶ 42} "In disparate treatment cases, the fourth element may be replaced with the requirement that the plaintiff show he was treated differently from similarly-situated individuals." *Simmons-Means*, 2006-Ohio-4123, at ¶ 12 (8th Dist.), citing *Mitchell v. Toledo Hosp.* 964 F.2d 577, 582 (6th Cir. 1992). Hudson alleges that he experienced discrimination in regards to training. Specifically, Hudson alleges he was not trained as an operator and had to obtain his certification on his own whereas coworker Shaun Varney ("Varney") received training from his superiors. Hudson further argued that as a result, Varney achieved certification in

October 2020 and Hudson did not receive certification until January 2021. Hudson received a Powered Industrial Truck certification and became a load operator. Varney received a Material Handler Operator certification and operated a shearing machine. Hudson has not established that he and Varney were similarly situated based upon their differing certifications and job positions. Thus, Hudson's allegations do not satisfy the fourth element required for a prima facie case of disparate treatment.

{¶ 43} Hudson also cited the disciplinary action he received following the incident with Kesman. Following an investigation by Human Resources, FPT determined both men violated work rules and provided both Kesman and Hudson the same discipline. Based upon FPT's imposing the same discipline on the two men, Hudson cannot claim that he was treated less favorably than a similarly situated, nonprotected employee. Hudson also challenges that Spencer Pride, an African-American coworker, was not disciplined when he damaged his loader while Hudson was disciplined for damaging the same piece of equipment. These facts do not give rise to disparate treatment since Hudson and Pride are both members of a protected class.

{¶ 44} "General complaints of unfair treatment not stemming from racial animus or some other form of discrimination are not protected activity" under R.C. Ch. 4112. *Tanksley v. Howell*, 2020-Ohio-4278, ¶ 39 (10th Dist.), quoting *Kiehl v. Univ. Hosps. Health Sys. — Heather Hill, Inc.*, 2009 U.S. Dist. LEXIS 47040 (N.D. Ohio June 4, 2009).

**5. Retaliation**

{¶ 45} In its MSJ, FPT argued that Hudson's retaliation claim was premised on FPT's termination following Hudson's filing an amended OCRC charge. Yet, FPT did not learn about Hudson's OCRC charges until after Hudson's termination.

{¶ 46} In his brief in opposition to the MSJ, Hudson did not address the amended OCRC charge, but argued he experienced retaliation due to numerous complaints Hudson lodged with FPT regarding treatment by his coworkers. To establish a prima facie case of retaliation under R.C. 4112.02(I), a plaintiff must demonstrate that "(1) he engaged in a protected activity; (2) his employer knew of his participation in the protected activity; (3) he suffered an adverse employment action; and (4) a causal link existed between the protected activity and the adverse action." *Simmons-Means,* 2006-Ohio-4123, at ¶ 32 (8th Dist.), citing *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.*, 99 Ohio App.3d 396, 402 (9th Dist. 1994).

{¶ 47} In regard to the fourth element — causal connection — sufficient evidence was needed to raise an inference that Hudson's complaints were the likely reason for his termination. *Anagonye v. Transform Automotive, LLC*, E.D.Mich. No. 21-11174, 2023 U.S. Dist. LEXIS 234032, *29 (Dec. 27, 2023), quoting *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001). Hudson presented no evidence that his termination was related to his numerous complaints that spanned from May 2020 through April 2021. In contrast, the evidence demonstrates

Hudson's termination was directly related to his violation of the work rules when he was found sleeping on the job inside his running loader.

**6. Hostile Work Environment**

{¶ 48} Hudson alleges that he was subject to a hostile workplace based upon "everything that [he] has list[ed] in his complaint." Hudson alleges he experienced continuous offensive behavior and mental anguish, and FPT took no action when Hudson was hit in the head, threatened, or subject to profane language at work.

{¶ 49} An actionable race-based hostile workplace claim must show (1) the employee was the member of a protected class, (2) the employee was subjected to unwelcome harassment, (3) the harassment complained of was based upon race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an intimidating, hostile, or offensive working environment, and (5) the employer knew or should have known about the harassment and failed to act. *Bell v. Cuyahoga Community College*, 129 Ohio App.3d 461, 467 (8th Dist. 1998). To determine the existence of a hostile work environment, courts look at the totality of the circumstances. *Rice v. Cuyahoga Cty. DOJ*, 2005-Ohio-5337, ¶ 32 (8th Dist.), citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998).

{¶ 50} This court has found that

> [t]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the victim must subjectively regard as abusive. *Bowman v. Shawnee State Univ.* (6th Cir. 2000), 220 F.3d 456, 463. "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment 'include the frequency of the discriminatory conduct; its severity;

> whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting *Harris*, 510 U.S. at 23). The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

*Rice v. Cuyahoga Cty. DOJ*, 2005-Ohio-5337, ¶ 32 (8th Dist.).

{¶ 51} Hudson failed to demonstrate that FPT was permeated with discriminatory intimidation, ridicule, and insult that was enough to alter the conditions of employment and create an abusive work environment. *See Simmons-Means*, 2006-Ohio-4123, at ¶ 24 (8th Dist.). Hudson's work record demonstrates that incidents with coworkers occurred during his tenure at FPT but there is no evidence that they were related to Hudson's race. The only evidence that the incidents were racially motivated was Hudson's self-serving statements that alone are insufficient to withstand an MSJ. *Bostick v. Salvation Army*, 2023-Ohio-933, ¶ 49 (8th Dist.).

### 7. Universal Declaration of Human Rights

{¶ 52} Hudson's complaint alleged a violation of Article 23.1 of the Universal Declaration of Human Rights ("Declaration"). The Declaration is not enforceable in American courts, and a cause of action based upon its violation must be dismissed. *Curtis v. Hardin*, 2017 U.S. Dist. LEXIS 95629, *23 (W.D. KY June 20, 2017); *Marie-Lucas v. Correction Officer Co. Cassidy*, 2023 U.S. Dist. LEXIS 85154, *20 (S.D. Ohio May 15, 2023).

### 8. Claims Against Soave and Cleveland-Cliffs

{¶ 53} Hudson's discrimination complaint named all three defendants — FPT, Soave, and Cleveland-Cliffs — and in the MSJ, Soave and Cleveland-Cliffs argued they were entitled to summary judgment because they were not Hudson's employer.

{¶ 54} Two entities may be considered "joint employers" if one entity "exercises a degree of control that exceeds the control normally exercised by a parent corporation over its separate and distinct subsidiary corporation." *Wilmot v. Forest City Auto Parts*, 2000 Ohio App. LEXIS 2734, *9 (8th Dist. June 22, 2000). When assessing whether entities are joint employers, courts consider the interrelations of the entities, common management, centralized control of labor relations, and common ownership and financial control. *Id.*

{¶ 55} Here, Cleveland-Cliffs had no ownership interest in FPT until November 18, 2021, a date after FPT terminated Hudson. No evidence indicated Cleveland-Cliffs engaged in the day-to-day management of FPT prior to that date. Thus, Cleveland-Cliffs was not a joint employer of Hudson and was entitled to summary judgment on this basis.

{¶ 56} Soave and FPT were owned by the same parent entity but Soave had no ownership in FPT. Cook was employed by FPT in a Human Resources/Safety position and was responsible for designated human relations activities at FPT but Soave also provided senior human resources and legal support to FPT. A review of the evidence here indicates the interrelationship between Soave and FPT, common management, and centralized control of labor indicate there is a genuine issue of

material fact as to whether Soave was a joint employer of Hudson. However, Soave, as Hudson's employer, was entitled to summary judgment because, as discussed above, there are no genuine issues of material fact relative to Hudson's discrimination claims.

{¶ 57} For the foregoing reasons, we find that the defendants' MSJ demonstrated there was no genuine issue of material fact and the defendants were entitled to judgment as a matter of law. Accordingly, Hudson's assignments of error that relate to the trial court's order granting the defendants' MSJ are overruled.

## B. Civ.R. 60(B) Motion

{¶ 58} Hudson argues that the trial court erred when it denied his Civ.R. 60(B) motion.

{¶ 59} To prevail on a Civ.R. 60(B) motion for relief from judgment, the moving party must demonstrate that (1) the party has a meritorious defense or claim to present if the relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1)-(5); and (3) the motion is made within a reasonable time. *Internatl. Total Servs. v. Estate of Nichols*, 2019-Ohio-4572, ¶ 7 (8th Dist.), citing *GTE Automatic Elec. v. ARC Industries*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. Civ.R. 60(B)'s requirements for relief are independent and listed in the conjunctive; therefore, if any of the requirements are not met, the motion for relief must be denied. Further, we review a trial court's ruling on a Civ.R. 60(B) motion for relief under an abuse-of-discretion standard.

*Bank of N.Y.*, 2012-Ohio-5285, ¶ 25 (8th Dist.), citing *Benesch, Friedlander, Coplan & Aronoff, LLP v. Software, Inc.*, 2009-Ohio-1617, ¶ 13 (8th Dist.).

{¶ 60} The majority of Hudson's arguments presented in the motion reiterate the merits of his case as presented in defense to the MSJ. Such arguments are appropriate in a direct appeal but not a Civ.R. 60(B) motion. *Wohlabaugh v. Salem Communications Corp.*, 2005-Ohio-1189, ¶ 14 (8th Dist.), citing *Doe v. Trumbull Cty. Children Serv. Bd.*, 28 Ohio St.3d 128 (1986), paragraph two of syllabus ("[I]t is axiomatic that Civ.R. 60(B) may not be used as a substitute for appeal.").

{¶ 61} Additionally, Hudson cannot demonstrate that he is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through 60(B)(5). Hudson introduces new causes of action and new evidence in the motion but a Civ.R. 60(B) motion is not the proper vehicle to introduce new causes of action or new evidence. *Settonni v. Settonni*, 2012-Ohio-3084, ¶ 23 (8th Dist.), quoting *Riesbeck v. Indus. Paint & Strip*, 2009-Ohio-6250, ¶ 18 (7th Dist.) ("Evidence that could have been discovered prior to trial by the exercise of due diligence does not qualify as newly discovered evidence.").

{¶ 62} Hudson asserts that he was entitled to a Civ.R. 60(B) motion because he did not know the trial court could rule on defendants' MSJ prior to the scheduled October 11, 2023 pretrial and, therefore, Hudson did not timely submit additional evidentiary material to be considered in defense of the MSJ. "Generally, this court holds a pro se litigant to the same standard as all other litigants, and presumes the

pro se litigant to have knowledge of the relevant law and applicable procedure." *State v. D.H.*, 2018-Ohio-1199, ¶ 5 (8th Dist.), citing *State v. Bolton*, 2016-Ohio-5706, ¶ 30 (8th Dist.).

{¶ 63} Hudson's argument that the trial court's ruling on his motion to strike before he had an opportunity to file a reply brief serves as a basis for a Civ.R. 60(B) motion is unpersuasive. "The failure of a trial court to read or consider a brief is not an event covered by the various provisions of Civ.R. 60(B)." *Gold Touch v. TJS Lab*, 130 Ohio App.3d 106, 110 (8th Dist. 1998), quoting *Chester Twp. v. Fraternal Order of Police*, 102 Ohio App.3d 404, 408 (11th Dist. 1995.).

{¶ 64} For the foregoing reasons, Hudson's Civ.R. 60(B) lacked merit and, therefore, the trial court did not abuse its discretion when it denied the motion. Accordingly, we overrule all assignments of error related to Hudson's Civ.R. 60(B) motion.

## C. Judicial Review pursuant to R.C. 4112.06

{¶ 65} Hudson argues that the trial court erred when it failed to provide proper judicial review under R.C. 4112.06. Any proceeding under R.C. 4112.06 "shall be initiated by the filing of a petition." R.C. 4112.06(B). Hudson failed to file a petition, as required under R.C. 4112.06, and therefore, we decline to review any related assignment of error.

## D. Motion to Strike

{¶ 66} Hudson asserts that the trial court erred when it denied his motion to strike. This court reviews a ruling on a motion to strike under an abuse-of-discretion

standard. *State ex rel. Ebbing v. Ricketts*, 2012-Ohio-4699, ¶ 13, citing *State ex rel. Mora v. Wilkinson*, 2005-Ohio-1509, ¶ 10.

{¶ 67} On July 6, 2023, Hudson filed two motions — a brief in opposition to defendants' MSJ and a motion to strike. Hudson's motion to strike sought to exclude numerous exhibits attached to the defendants' MSJ and asserted why Hudson disagreed with the content and/or characterization of the events described in many of the exhibits. On July 17, 2023, the defendants filed their reply brief in regards to the MSJ, and on July 20, 2023, the defendants filed a brief in opposition to Hudson's motion to strike. Hudson had the option to file a response to the defendants' brief in opposition within the following seven days. Civ.R. 6(C)(1). On July 25, 2023, before the seven days had elapsed, the trial court summarily denied Hudson's motion to strike. Hudson argues the trial court erred when it prematurely granted his motion.

{¶ 68} Hudson thoroughly presented his arguments in his motion to strike, and the defendants responded. Civ.R. 6(C) does not require the filing of a reply motion, but states a litigant "may" do so. Hudson's arguments that he intended to introduce additional evidence in his reply brief in support of his opposition to the defendants' MSJ are misguided. His brief in opposition to the MSJ was Hudson's only opportunity to present arguments and evidence in support of his case.

{¶ 69} Additionally, our review of the record shows that the exhibits attached to the defendants' MSJ — and that were the subject of Hudson's motion to strike — were properly authenticated and submitted. The trial court's ruling on Hudson's

motion to strike before Hudson filed a reply brief could at most be described as harmless error. Thus, Hudson's assigned errors that relate to his motion to strike are overruled.

**{¶ 70}** For the foregoing reasons, we overrule all of Hudson's 21 assignments of error.

**{¶ 71}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR