JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Norman Rice appeals from the judgment of the trial court that awarded summary judgment to the Cuyahoga County Department of Justice Affairs ("CJA"), Maureen Weigand, Martin Murphy, and Cuyahoga County Commissioners Jimmy Dimora, Tim McCormack, and Peter Lawson Jones (collectively referred to as the "county" or "county defendants"). For the reason set forth below, we affirm.
 {¶ 2} On September 8, 2003, plaintiff, an African-American, filed this action in connection with the county's decision that he would not receive a promotion to the position of assistant superintendent of the Youth Development Center ("YDC"), and set forth claims for race discrimination, retaliation, violation of public policy and intentional infliction of emotional distress.
 {¶ 3} The county defendants denied liability and moved for summary judgment. Evidentiary materials submitted to the court established that on September 13, 1999, plaintiff was hired at the YDC, an entity which runs various programs for juveniles under the jurisdiction of the juvenile court. Plaintiff, who is a licensed social worker, was hired as a social program coordinator. The duties of this position include "[co-ordinates social program unit and provides related services to meet client needs * * * [s]upervise social counselors involved in meeting client needs * * * [p]rovides services to clients to meet established needs * * * attends meetings to ensure that client needs are met[.]" The county noted, however, that other duties may be required or assigned. Plaintiff described the position as providing "support to the clinical coordinator * * * supervision of social counselors, and working with mainly support to the social workers." (Rice depo. 57). The pay grade for the position is 8.
 {¶ 4} Plaintiff's supervisor was Clarence Hunter, who is also African-American. Plaintiff's job performance was excellent but he experienced difficulty with defendant Martin Murphy, the interim director of the Department of Justice Affairs and defendant Maureen Weigand, a department manager.
 {¶ 5} Plaintiff maintained that Murphy smirked and sneered at him during meetings, that Murphy improperly reprimanded him for authorizing a juvenile to be released to a faith-based organization, indicating that it was a violation of the law, and was generally hostile to him.
 {¶ 6} Plaintiff also maintained that Maureen Weigand, a department manager, would not speak to him, looked the other way and groaned when they approached one another, was very aggressive toward him, and made derogatory comments to him which challenged his competency. According to plaintiff, in February 2000, Weigand caused another worker to falsely report that plaintiff had not provided various documentation for his files. He had failed to provide written discharge summaries, and in August 2001, falsely reported that plaintiff failed to advise a supervisor of a client's drug use. Shortly thereafter, Weigand stopped working at the YDC campus for approximately one year. Upon her return, however, she accused plaintiff of interfering with the supervision of a client assigned to another worker.
 {¶ 7} By August 2002, a number of workers had left county employment through an early retirement incentive program, and plaintiff took on additional job duties. On August 12, 2002, plaintiff requested a Comprehensive Position Questionnaire ("CPQ") or formal audit of his position, in connection with a request for a possible pay increase or position reclassification. Plaintiff also requested compensation for the additional duties he had performed as a result of the early retirement of other workers who had not been replaced. On this document, plaintiff indicated that he had "assumed the responsibilities for the "supervision of Y.D.C./Court Liaison services," and "supervision of various assigned departments." He also indicated, however, that he "was not forced to perform these duties, but volunteered to assist our agency." Plaintiff testified that he supervised "[s]trictly LSWs, nonclinical" and "no LPCs." (Rice depo. 223).
 {¶ 8} Clarence Hunter recommended that plaintiff be designated as having the new position of assistant superintendent, with a concomitant pay increase, and he and county administrator Lee Trotter assured plaintiff that he would receive the new position "no question about it." Included at this time was information that plaintiff had been working as a social work supervisor, pay grade 12, though the department did not have such a position.
 {¶ 9} Murphy, however, noted on the CPQ that many of the additional duties undertaken by plaintiff were actually within his position as social program coordinator. He also disputed plaintiff's claim that he had performed duties of a supervisory nature, and noted that the Ohio Revised Code requires advanced clinical certification in order to supervise persons who administer client services, and plaintiff does not have an advanced license. According to Murphy, Carla Brown had actually fulfilled these duties following a vacancy within the division. Murphy further indicated that plaintiff had otherwise performed duties consistent with his position as a social program coordinator, and he stated that he did not concur in the permanent pay increase or promotion of plaintiff to the new position of assistant superintendent. Murphy therefore proposed that plaintiff's salary be supplemented with four months of temporary pay, for the period beginning on August 12, 2002 to January 1, 2003, as compensation for additional duties which he undertook. Murphy additionally remarked that giving plaintiff additional job responsibilities had been a mistake, in light of plaintiff's lapses in communicating with parents and safety failures which led to injuries.
 {¶ 10} On March 3, 2003, plaintiff sent a written complaint to Clarence Hunter in which he complained of his treatment at the YDC and alleged that it was perhaps driven by racial discrimination. Within this document, he requested transfer to the Department of Children and Family Services or Senior and Adult Services as a senior administrative officer or a social work supervisor. Plaintiff sent copies of the memo to the county commissioners, Trotter, and Human Resources Director Dennis Madden.
 {¶ 11} On March 12, 2003, Carla Brown, who is also African-American, was appointed to the position of assistant superintendent.
 {¶ 12} On May 11, 2003, plaintiff filed a complaint with the county in which he alleged that, at a May 2, 2003 budget meeting, Murphy constantly bombarded him with questions, and blamed him for a decision for which he was not responsible. According to plaintiff, Murphy stated, "there's a lesson to be learned." Plaintiff claimed that this was to chastise him for complaining about discrimination.
 {¶ 13} Following the meeting, plaintiff learned that his request to receive the new job classification via the CPQ had been denied. Approximately one month later, he received written notification that he had not been granted the promotion but would instead receive a four-month retroactive pay raise for additional duties he had assumed.
 {¶ 14} On June 12, 2003, plaintiff filed an internal complaint against Murphy in connection with Murphy's remarks on the CPQ. Plaintiff insisted that his duties included the supervision of the social worker unit and that an equivalent position is social worker supervisor or social program administrator 2. He also filed an appeal to the State Personnel Board of Review in which he maintained that he had performed duties in addition to those of his position. Plaintiff's appeal was denied and he commenced a further appeal to David Reines, a county administrator, but later dismissed that proceeding when he learned that he could not bring an attorney.
 {¶ 15} Plaintiff filed this action in September 2003. Two months later, he took a five-week medical leave of absence, claiming that he was suffering from workplace-related stress and anxiety. He currently takes anti-depressant medication.
 {¶ 16} Plaintiff reported to Carla Brown when he returned. He described his working relationship with her as "poor." (Rice depo. At 59). He claimed that she was hostile to him, and that she instigated a grievance filed against him for laughing at another employee who was having difficulty with the parent of a client. He claimed that she is an "Uncle Tom in which she will bow down and hurt anyone as long as she is going to get something out of it."
 {¶ 17} The trial court determined that there were no genuine issues of material fact, and that plaintiff could not prove racial discrimination as a matter of law, and that he offered no evidence of damages on the retaliation or emotional distress claims. Plaintiff now appeals and assigns three errors for our review.
 {¶ 18} Within his first assignment of error, plaintiff asserts that the trial court erred in granting the county's motion to strike his affidavit, prepared following his deposition. Plaintiff maintains that the affidavit was not in contradiction of the deposition testimony. He also complains that the court ordered the affidavit stricken prior to the expiration of his time for filing a response to the defendants' motion to strike.
 {¶ 19} With regard to the timing of the court's action, a trial court is vested with discretion in rendering decisions on discovery matters.Mauzy v. Kelly Services, Inc., 75 Ohio St.3d 578, 592, 1996-Ohio-265,664 N.E.2d 1272. On review, this court is to determine whether the trial court's standard of review is whether there was an abuse of discretion. Id. To show an abuse of discretion, the complaining party must show that the judge's actions were "unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. Moreover, "an appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights." Mauzy v. Kelly Services, Inc., supra.
 {¶ 20} Pursuant to Loc.R. 11(C) of the Court of Common Pleas of Cuyahoga County, General Division, the non-moving party has at least seven days to serve and file "a brief written statement of reasons in opposition to the motion and a list of citations of authorities which are relied upon." While a judge may conclude that the non-movant will not have a meritorious response to the motion, a judge should endeavor to provide the non-movant with an opportunity to respond so the record may be preserved. Carrington v. Cleveland Bd. of Educ. (Dec. 9, 1999), Cuyahoga App. No. 74624.
 {¶ 21} With regard to the substantive law, we note that a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony. Bellian v. Bicron Corp. (Dec. 18, 1992), Geauga App. No. 92-G-1695; McCain v. Cormell (June 30, 1994), Trumbull App. No. 93-T-4967; Gagne v. Northwestern National Insurance Co. (C.A. 6, 1989),881 F.2d 309, 315. Accord Steiner v. Steiner (July 12, 1995), Scioto App. No. 93CA2191.
 {¶ 22} In this matter, the trial court entered its ruling prior to the expiration of plaintiff's response time. However, the basis offered for the affidavit, i.e., plaintiff's confusion due to blood sugar issues, should have been raised following the termination of the testimony. In this matter, plaintiff did not assert any changes in form or substance in accordance with Civ. R. 30(E). Cf. Bishop v. Adm'r, Bureau of Workers'Comp., 146 Ohio App.3d 772, 2001-Ohio-4274, 768 N.E.2d 684.
 {¶ 23} Moreover, the affidavit averred that Murphy uttered a racist remark in stating that "you people think you can do anything." In deposition, however, plaintiff stated that he never heard Murphy or Weigand utter a racist comment. Further, the affidavit also contained a new claim not raised in the prior proceedings, i.e., that plaintiff should have received an appointment to the position of clinical supervisor.
 {¶ 24} In accordance with the foregoing, although the correct practice is to allow the non-moving party time to respond to the motion to strike under Loc.R. 11(C), in this instance, the trial court could have properly concluded that plaintiff would not have a meritorious response to the motion to strike, and the trial court did not abuse its discretion, did not act improvidently, and did not impair plaintiff's substantial rights.
 {¶ 25} The first assignment of error is without merit.
 {¶ 26} Within his second assignment of error, plaintiff asserts that the trial court erred in granting defendants' motion for summary judgment. Plaintiff complains that there was past evidence of discrimination by the same actors, and overwhelming evidence of discrimination and retaliation. Plaintiff alleged that Murphy and Weigand "committed acts that are racist in nature," that Murphy made racial slurs, that plaintiff was not appropriately compensated and that he was denied a promotion.[1]
 {¶ 27} We review the grant of summary judgment de novo using the same standards as the trial court. Nationwide Mut. Fire Ins. Co. v. GumanBros. Farm (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.
 {¶ 28} A trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
 {¶ 29} The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment. Id., citing Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Vahila v.Hall, supra.
 {¶ 30} In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Civ.R. 56(E); Harless v. Willis Day Warehousing Co., supra. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact for trial. Vahila v. Hall, supra. If the party does not so respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. summary judgment, if appropriate, shall be entered against the non-moving party. Jackson v.Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52,567 N.E.2d 1027, 1031.
A. RACIAL DISCRIMINATION
1. Hostile Work Environment
 {¶ 31} A plaintiff may bring a claim pursuant to R.C. 4112.02 where he can show that severe and pervasive harassment on the basis of race altered the conditions of employment by creating a "hostile work environment." Tarver v. Calex Corp. (1998), 125 Ohio App.3d 468,708 N.E.2d 1041.
 {¶ 32} A hostile work environment occurs "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. ForkliftSys., Inc. (1993), 510 U.S. 17, 21, 126 L.Ed.2d 295, 114 S.Ct. 367(internal quotation marks and citations omitted). In determining whether there was a hostile work environment, the court looks to the totality of the circumstances. Faragher v. City of Boca Raton,
524 U.S. 775,787-88, 141 L.Ed.2d 662, 118 S.Ct. 2275 (1998). The conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that the victim must subjectively regard as abusive. Bowman v. Shawnee State Univ. (6th Cir. 2000), 220 F.3d 456, 463. "Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment `include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23). The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788.
 {¶ 33} Such a claim is established when the workplace is permeated with "discriminatory intimidation, ridicule, and insult," that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor SavingsBank, FSB v. Vinson, 477 U.S. 57, 91 L.Ed.2d 49, 106 S.Ct. 2399 (1986). As pointed out in Meritor, "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment — an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview."
 {¶ 34} In this matter, the undisputed evidence of record established that although Murphy could be a difficult superior who exhibited a conflict with plaintiff, he did not work with plaintiff at the YDC campus and did not have regular contact with him. Moreover, there was no evidence that Murphy's conduct interfered with plaintiff's work performance.
 {¶ 35} With regard to Weigand, the record indicates that she had issued complaints against plaintiff but they were never acted upon within the agency and she was later banned from the campus. Moreover, plaintiff's interaction with her was infrequent.
 {¶ 36} In addition, plaintiff testified that he did not hear Weigand or Murphy utter a racial slur. Accordingly, plaintiff failed to demonstrate that the workplace was permeated with "discriminatory intimidation, ridicule, and insult," which was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." The record indicates only that Murphy and Wiegand had conflict with plaintiff but there is no evidence that it was based upon his race. See Hampel v. Food Ingredients Specialties, Inc.,89 Ohio St.3d 169, 176-77, 2000-Ohio-128, 729 N.E.2d 726 ("* * * Hord's outburst against [Hampel] was personal and not gender-based * * * not because of his sex, but because he was Hampel. However, R.C. 4112.02(A) does not reach disparate treatment on account of personal animosity; no matter how severe or pervasive the conduct, harassment does not constitute a discriminatory practice under R.C. 4112.02(A) unless based on a prohibited classification.").
 {¶ 37} Finally, plaintiff charges that Weigand and Murphy harassed other minorities, including those working at other offices and different county jobs. He admitted in deposition, however, that he never heard a racial slur, and that he was not certain whether the other employees listed heard slurs directly or just "had knowledge of such[.]" (Rice depo. At 137).
 {¶ 38} Moreover, the bulk of the "evidence" relied upon by plaintiff is presented in connection with other litigation filed against the county or hearsay regarding other alleged discrimination against other county workers. In any event, plaintiff has established no connection between these alleged occurrences and his own claims[2] and has not demonstrated how this alleged conduct altered the conditions of his employment and created an abusive working environment. See McLeod v.Parsons Corp., 73 Fed. Appx. 846, 2003 LEXIS 18753 (6th Cir.).
 {¶ 39} Further, as legal support for asserting such claims in this matter, plaintiff relies upon Kerans v. Porter Paint Co. (1991),61 Ohio St.3d 486, 575 N.E.2d 428. In Kerans, however, the court held that "Where a plaintiff brings a claim against an employer predicated upon allegations of workplace sexual harassment by a company employee, and where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employer knew or should have known, summary judgment may not be granted in favor of the employer, even where the employee's actions in no way further or promote the employer's business." (Emphasis added). Kerans Case law subsequent to the Kerans case has uniformly limited the case to its facts. See, e.g.,Griswold v. Fresenius USA, Inc. (1997), 964 F.Supp. 1166; Myers v.Goodwill Industries of Akron, Inc. (1998), 130 Ohio App.3d 722, 728,721 N.E.2d 130 ("We decline plaintiff's invitation to extend this holding[Kerans] to other instances of underlying misconduct in the absence of any indication that the Supreme Court intended to do so"). Accordingly, this case is inapposite.
2. Adverse Employment Action
 {¶ 40} A plaintiff may bring a claim pursuant to R.C. 4112.02 where he can show that he suffered a specific "adverse employment action" on the basis of race. Shepard v. Griffin Services, Inc., Montgomery App. No. 19032, 2002-Ohio-2283.
 {¶ 41} A plaintiff may establish a claim of discrimination either introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination. See Kline v. Tennessee Valley Auth. (6th Cir. 1997),128 F.3d 337, 348. Under the circumstantial evidence approach, theMcDonnell Douglas-Burdine tripartite test is employed. See McDonnellDouglas Corp. v. Green (1973), 411 U.S. 792, 36 L.Ed.2d 668, 93 S.Ct. 1817, as later clarified by Texas Dep't of Community Affairs v. Burdine
(1981), 450 U.S. 248, 67 L.Ed.2d 207, 101 S.Ct. 1089. This paradigm requires the plaintiff to establish a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. A plaintiff may establish a prima facie case of race discrimination for failure to promote by showing (1) that she is a member of a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. Sutherland v. Mich. Dept. of Treasury (6th Cir. 2003), 344 F.3d 603, 614.[3]
 {¶ 42} Once a plaintiff has set forth a prima facie case of race discrimination, the burden shifts to the defendant to present a "legitimate, non-discriminatory reason" for the failure to promote. Id. at 614-15 (citing Texas Dept. of Cmty. Affairs v. Burdine, supra).
 {¶ 43} If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination. Id. The plaintiff may establish that the proffered reason was a mere pretext by showing that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action. SeeWheeler v. McKinley Enters. (6th Cir. 1991), 937 F.2d 1158, 1162. "A reason cannot be proved to be `a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center v. Hicks (1993), 509 U.S. 502, 515,125 L.Ed.2d 407, 113 S.Ct. 2742.
 {¶ 44} In this matter, the evidence demonstrates with respect to the Assistant Superintendent job, that this position was awarded to Carla Brown who is also a member of the same protected class as plaintiff, i.e., African-American. Accordingly, plaintiff cannot establish a prima facie case of discrimination as to this position.
 {¶ 45} With regard to the position of Clinical Coordinator, plaintiff asserted that in February 2004, or six months after the complaint was filed, that he was denied an interview for this position and that it was given to a white male. The evidence demonstrated however, that a prerequisite of this position advanced clinical certification such as LISW. This requirement reflects the dictates of the Ohio Administrative Code regarding the certification needed to supervise. See Defendant's Exhibits L, M. See, also, Defendant's Exhibit D.
 {¶ 46} In accordance with all of the foregoing, the trial court properly entered summary judgment for defendants on the discrimination claim.
B. RETALIATION
 {¶ 47} In order to establish a prima facie case of retaliation plaintiff must show: 1) that he was engaged in protected activity, 2) his exercise of protected rights was known to the defendant, 3) the defendant took an adverse employment action against him, or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and 4) a causal connection between the protected activity and the adverse employment action or harassment. See Morris v. Oldham County FiscalCourt (6th Cir. 2000), 201 F.3d 784, 792.
 {¶ 48} The "materially adverse change in the terms of her employment" branch of retaliation was explained in Kocsis v. Multi-Care Management,Inc. (6th Cir. 1996), 97 F.3d 876, 885. The Kocsis Court listed certain factors to consider in determining whether an employment action was materially adverse: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." Id., citingCrady v. Liberty Nat'l Bank and Trust Co. (7th Cir. 1993), 993 F.2d 132,136. The court also stated that a change in employment conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id., 97 F.3d at 886.
 {¶ 49} With regard to the "severe or pervasive retaliatory harassment" branch of retaliation, we note that employment actions that are de minimis are not actionable. Bowman v. Shawnee State Univ. (6th Cir. 2000), 220 F.3d 456, 462. "If every low evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure." Primes v. Reno (6th Cir. 1999), 190 F.3d 765, 767.
 {¶ 50} In this matter, the four-month Temporary Work Level is not a "materially adverse" employment action because plaintiff received a pay increase for the work that he undertook. See Thomas v. Compuware Corp.
(6th Cir. 2004), Case No. 02-1995, 105 Fed. Appx. 60; 2004 U.S. App. LEXIS 15656.
 {¶ 51} As to the claim of retaliatory harassment arising in connection with plaintiff's allegation that he was treated harshly following his complaints of discrimination, plaintiff stated that the meeting was "not a pleasant experience" and that he was "questioned/battered related to constraints of budget issues." This is insufficient to establish either a materially adverse change in the terms of employment or severe or pervasive retaliatory harassment.
 {¶ 52} Finally, as to the fact that plaintiff did not receive the promotion to the position of Assistant Superintendent, we again note that he did not possess the requisite license for this position. See Defendant's Exhibits L, M, and D.
 {¶ 53} The second assignment of error is without merit.
 {¶ 54} Within his third assignment of error, plaintiff asserts that the trial court erred in granting summary judgment for defendants on his claim of intentional infliction of emotional distress.
 {¶ 55} The Supreme Court of Ohio has defined the tort of intentional infliction of emotional distress as:
 {¶ 56} "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."
 {¶ 57} Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen Helpers of Am. (1983), 6 Ohio St.3d 369, 453 N.E.2d 666, syllabus.
 {¶ 58} To establish a claim for intentional infliction of emotional distress, the plaintiff must prove: (1) that the defendant either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress; (2) that the defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it would be considered utterly intolerable in a civilized community; (3) that the defendant's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental distress suffered by plaintiff is serious and of such a nature that no reasonable person could be expected to endure it. See Pylev. Pyle (1983), 11 Ohio App.3d 31, 34, 463 N.E.2d 98. See, also,Phung v. Waste Mgt., Inc., 71 Ohio St.3d 408, 410, 1994-Ohio-389,644 N.E.2d 286.
 {¶ 59} Liability for intentional infliction of emotional distress will only be found in the most extreme circumstances:
 {¶ 60} "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'" Yeager v. Local Union 20, supra.
 {¶ 61} The Supreme Court of Ohio has also made clear that "in order to state a claim alleging the intentional infliction of emotional distress, the emotional distress alleged must be serious." Id. In Paugh v. Hanks
(1983), 6 Ohio St.3d 72, 78, 451 N.E.2d 759, the Supreme Court of Ohio described "serious emotional distress" as "emotional injury which is both severe and debilitating." The Paugh Court held that "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Id. The Court then set forth some examples of serious emotional distress: "A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." Id.
 {¶ 62} In this matter, the conduct at issue is that Wiegand allegedly created untrue accusations against him, was aggressive and refused to speak him, looked the other way when she passed him, and was disrespectful. Plaintiff also alleged that Murphy was very intimidating, disrespectful, hostile, and smirked at him during meetings. Although this conduct demonstrates severe personality conflicts in the workplace, it is not "so extreme and outrageous as to go beyond all possible bounds of decency and was such that it would be considered utterly intolerable in a civilized community."
 {¶ 63} Moreover, the evidence demonstrated that after filing this lawsuit, plaintiff saw a psychologist due to anxiety at work, was depressed, had chest pains and knots in his stomach, had difficulty sleeping and was very moody. He took a five week medical leave. Nonetheless, the evidence further demonstrated that thereafter, plaintiff simply made a personal decision that he was going to go to work, get his job done, and "not let anyone bother me no matter what they do." (Rice depo. 152-152). Continuing employment, without difficulty, indicates that her emotional distress was not severe and debilitating. Ridley v. Fed.Express, Cuyahoga App. No. 82904, 2004-Ohio-2543; Garcia v. ANR FreightSys., Inc. (N.D.Ohio, 1996), 942 F.Supp. 351, 359-360.
 {¶ 64} In accordance with the foregoing, the trial court did not err in awarding summary judgment to defendants on plaintiff's claim for intentional infliction of emotional distress.
 {¶ 65} The third assignment of error is without merit. Affirmed.
It is ordered that appellees recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., concurs.
 PATRICIA ANN BLACKMON, A.J., CONCURS AND DISSENTS. (SEE ATTACHEDCONCURRING AND DISSENTING OPINION)
[1] On appeal, plaintiff does not challenge the trial court's disposition of his claim that defendants actions constitute a violation of Ohio's public policy. Accordingly, we will not address that claim herein.
[2] Much of this alleged conduct is not part of this court's record.
[3] The standards for Title VII are equally applicable to Dews' claims under 42 U.S.C. § 1981 and R.C. § 4112. Dews v. A.B. Dick Co. (6th Cir. 2000), 231 F.3d 1016, 1021 n. 2. See Plumbers Steamfitters JointApprenticeship Commt. v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192,196, 421 N.E.2d 128.